MARTIN, Justice.
 

 On 9 April 2002, plaintiff Trooper Reginald Newberne filed suit against the named institutional and individual defendants, alleging that he was wrongfully terminated from his employment as a law enforcement officer with the State Highway Patrol in violation of the North Carolina Whistleblower Act, N.C.G.S. § 126-84 to -88. Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, which the trial court allowed in an order filed 29 January 2003. A divided panel of the Court of Appeals affirmed,
 
 Newberne v. Crime Control,
 

 168 N.C.App. 87
 
 ,
 
 606 S.E.2d 742
 
 (2005), and plaintiff appealed as a matter of right.
 
 See
 
 N.C.G.S. § 7A-30(2) (2003). We reverse.
 

 A motion to dismiss under N.C. R. Civ. P. 12(b)(6) "is the usual and proper method of testing the legal sufficiency of the complaint."
 
 Sutton v. Duke,
 

 277 N.C. 94
 
 , 98,
 
 176 S.E.2d 161
 
 , 163 (1970). In reviewing a trial court's Rule 12(b)(6) dismissal, the appellate court must inquire "`whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.'"
 
 Meyer v. Walls,
 

 347 N.C. 97
 
 , 111,
 
 489 S.E.2d 880
 
 , 888 (1997) (citations omitted);
 
 see also Isenhour v. Hutto,
 

 350 N.C. 601
 
 , 604-05,
 
 517 S.E.2d 121
 
 , 124 (1999). "Rule 12(b)(6) `generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery.'"
 
 Energy Investors Fund, L.P. v. Metric Constructors, Inc.,
 

 351 N.C. 331
 
 , 337,
 
 525 S.E.2d 441
 
 , 445 (2000)
 

 *204
 
 (quoting
 
 Sutton,
 

 277 N.C. at 102
 
 ,
 
 176 S.E.2d at 166
 
 (citation omitted));
 
 cf. Conley v. Gibson,
 

 355 U.S. 41
 
 , 45-46,
 
 78 S.Ct. 99
 
 ,
 
 2 L.Ed.2d 80
 
 , 84 (1957). Dismissal is proper, however, "when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim."
 
 Wood v. Guilford Cty.,
 

 355 N.C. 161
 
 , 166,
 
 558 S.E.2d 490
 
 , 494 (2002) (citing
 
 Oates v. JAG, Inc.,
 

 314 N.C. 276
 
 , 278,
 
 333 S.E.2d 222
 
 , 224 (1985));
 
 see also McAllister v. Khie Sem Ha,
 

 347 N.C. 638
 
 , 641-42,
 
 496 S.E.2d 577
 
 , 580-81 (1998) (citing
 
 Burgess v. Your House of Raleigh, Inc.,
 

 326 N.C. 205
 
 , 209,
 
 388 S.E.2d 134
 
 , 136 (1990)).
 

 In applying this standard of review, we treat the allegations in plaintiff's complaint as true: From November 1989 until his termination on 10 April 2001, the North Carolina Department of Crime Control and Public Safety (the Department) employed plaintiff as a sworn law enforcement officer in the State Highway Patrol (SHP). On 14 May 2000 at approximately 12:30 a.m., plaintiff arrived at a crime scene shortly after the arrest of Owen Jackson Nichols on suspicion of driving while impaired. Plaintiff did not directly participate in or witness Nichols's apprehension or arrest, which was effectuated by SHP Troopers B.O. Johnson, P.A. Collins, and J.R. Edwards.
 

 While speaking with another trooper at the scene, plaintiff was approached by Trooper P.A. Collins. Plaintiff noticed that Trooper Collins was rubbing his hand and asked whether he had been injured. Trooper Collins replied that he had jammed his hand after hitting Owen Nichols and that Trooper Edwards had "pulled it back in place." When plaintiff advised Trooper Collins to seek medical treatment, Trooper Collins responded that he "wouldn't know what to tell the sergeant" and added that he could tell the sergeant he broke his hand during a fall. After stating once again that Trooper Collins should seek medical attention, plaintiff departed the crime scene.
 

 Later that day, Andy Nichols, the father of Owen Nichols, filed a complaint with the Internal Affairs Section of the SHP, alleging that Troopers Johnson, Collins, and Edwards had used excessive force in the apprehension and arrest of his son. Nearly a month later, on 13 June 2000, plaintiff's supervisor, First Sergeant A.C. Combs, asked plaintiff if he had been involved in the apprehension and arrest of Owen Nichols or if he had witnessed anyone using force on Owen Nichols. Plaintiff responded that he arrived on the scene only after Nichols had been placed under arrest and that he did not witness anyone using force on Nichols. Plaintiff also reported that Trooper Collins had apparently injured his hand during the incident. At the conclusion of this conversation, First Sergeant Combs instructed plaintiff to "write what he saw" in a statement and to submit that statement before the end of plaintiff's shift.
 

 Plaintiff became apprehensive about preparing the statement, fearing that "breaking the code of silence" and disclosing facts concerning a potential abuse of authority by another officer might subject him to retaliation by First Sergeant Combs and others within the Department and the SHP. Plaintiff therefore complied with First Sergeant Combs's request by preparing a statement, incorporated by reference in plaintiff's complaint, limited to what he literally "saw" on the night in question. Plaintiff wrote in his statement that Trooper Collins had apparently injured his hand, but did not include Trooper Collins's oral comments concerning
 
 how
 
 he had incurred that injury.
 

 Despite having strictly followed First Sergeant Combs's instructions to write what he "saw," plaintiff remained troubled about whether he should also have included Trooper Collins's admission that he had struck Owen Nichols, notwithstanding plaintiff's fear of retaliation and reprisal. Accordingly, plaintiff sought the counsel of another trooper with the SHP, Sergeant Montgomery, in whom plaintiff confided both his fear of retaliation and his desire to "do the right thing." Shortly after soliciting and receiving Sergeant Montgomery's advice, plaintiff approached First Sergeant Combs on 20 June
 
 *205
 
 2000 and told him there were "things he didn't know" about the events of 14 May 2000. First Sergeant Combs directed plaintiff to prepare an amended statement including everything he knew about the incident, and plaintiff prepared and submitted his amended statement later that day. In the amended report, which is incorporated by reference in plaintiff's complaint, plaintiff disclosed the details of his conversation with Trooper Collins at the crime scene, including Trooper Collins's alleged statements, "I hit the subject and jammed my hand" and "It just happened, I should know better."
 

 On 15 September 2000, defendant Captain C.E. Moody, SHP Director of Internal Affairs, filed a personnel complaint against plaintiff based on information provided to him by First Sergeant Combs. The personnel complaint alleged that plaintiff had engaged in a "Serious Personal Conduct Violation" of the SHP Policy Manual's Directive No. H.1 Section VI, the so-called "Truthfulness Directive." On 10 April 2001, plaintiff was terminated from his employment with the Department and the SHP, ostensibly based on his violation of the Truthfulness Directive. Although at least some of the troopers directly involved in Owen Nichols's detention and arrest were disciplined for misconduct following an investigation into the 14 May 2000 incident, plaintiff was the only trooper whose employment was terminated.
 

 Based on the factual allegations summarized above, plaintiff asserted a claim for damages under the North Carolina Whistleblower Act, N.C.G.S. § 126-84 to -88. In stating his claim for relief, plaintiff expressly contended that defendants "discharged [p]laintiff because [p]laintiff reported to his superiors, both verbally and in writing, information in the Amended Statement that supports a contention that the Troopers violated State or federal law, rule or regulation and exercised gross abuse of authority in the apprehension and arrest of Owen Nichols." Plaintiff further asserted that defendants "discriminated against [p]laintiff for submitting the Amended Statement" in that plaintiff's dismissal was "grossly inequitable in comparison with the treatment and/or sanctions received by [the] other Troopers who were disciplined for the same and/or more severe misconduct but were not terminated." Plaintiff also contended that his termination "was pretextual in the perceived need to protect the Department and Division from a potential civil law suit by Owen Nichols for the use of excessive force."
 

 I.
 

 In 1989, the General Assembly amended Chapter 126 of the North Carolina General Statutes, the State Personnel Act (SPA), by enacting Senate Bill 125, entitled "An Act to Encourage Reporting of Fraud, Waste, and Abuse in State Government and Endangerment to the Public Health and Safety, and to Protect Informant State Employees from Retaliation," and popularly known as the "Whistleblower Act."
 
 Caudill v. Dellinger,
 

 129 N.C.App. 649
 
 , 653,
 
 501 S.E.2d 99
 
 , 102,
 
 disc. rev. denied,
 

 349 N.C. 353
 
 ,
 
 517 S.E.2d 887
 
 (1998),
 
 aff'd in part and disc. rev. improvidently allowed,
 

 350 N.C. 89
 
 ,
 
 511 S.E.2d 304
 
 (1999) (per curiam). Now codified as Article 14 of Chapter 126, the Whistleblower Act declares that
 

 [i]t is the policy of this State that State employees shall be encouraged to report verbally or in writing to their supervisor, department head, or other appropriate authority, evidence of activity by a State agency or State employee constituting:
 

 (1) A violation of State or federal law, rule or regulation;
 

 (2) Fraud;
 

 (3) Misappropriation of State resources;
 

 (4) Substantial and specific danger to the public health and safety; or
 

 (5) Gross mismanagement, a gross waste of monies, or gross abuse of authority.
 

 N.C.G.S. § 126-84(a) (2003). The Whistleblower Act further provides, in pertinent part, that
 

 [n]o head of any State department, agency or institution or other State employee exercising supervisory authority shall discharge, threaten or otherwise discriminate against a State employee regarding the State employee's compensation, terms, conditions, location, or privileges of employment because the State employee, or a
 
 *206
 
 person acting on behalf of the employee, reports or is about to report, verbally or in writing, any activity described in G.S. 126-84, unless the State employee knows or has reason to believe that the report is inaccurate.
 

 N.C.G.S. § 126-85(a) (2003).
 

 This Court has not previously had occasion to review claims brought under the Whistleblower Act. Based on our careful reading of the statute, however, we hold that the Act requires plaintiffs to prove, by a preponderance of the evidence, the following three essential elements: (1) that the plaintiff engaged in a protected activity, (2) that the defendant took adverse action against the plaintiff in his or her employment, and (3) that there is a causal connection between the protected activity and the adverse action taken against the plaintiff. This parsing of the statute is consistent with numerous state and federal court decisions identifying the essential elements of comparable whistleblower provisions in various state and federal statutes.
 
 See, e.g., Moon v. Transp. Drivers, Inc.,
 

 836 F.2d 226
 
 , 229 (6th Cir.1987) (stating the elements of a retaliatory discharge claim under section 405(a) of
 
 49 U.S.C. § 2305
 
 (a) (1982));
 
 Ross v. Commc'ns Satellite Corp.,
 

 759 F.2d 355
 
 , 365-66 (4th Cir.1985) (stating the elements of a retaliation claim under 42 U.S.C. § 2000e-3 (1982));
 
 Goff v. Cont'l Oil Co.,
 

 678 F.2d 593
 
 , 599 (5th Cir.1982) (stating the elements of a retaliation claim under
 
 42 U.S.C. § 1981
 
 )
 
 [1]
 
 ;
 
 Eaton v. Kindred Nursing Ctrs. W., LLC,
 

 2005 WL 1185802
 
 , at *9,
 
 2005 U.S. Dist. LEXIS 9545
 
 , at *25 (D.Me. May 19, 2005) (recommended decision of magistrate judge) (stating the elements of a claim brought under Maine Whistleblower Protection Act),
 
 aff'd,
 

 2005 WL 1520799
 
 ,
 
 2005 U.S. Dist. LEXIS 12622
 
 (D. Me. June 24, 2005) (No. Civ.04-131-B-W);
 
 Hubbard v. UPI,
 

 330 N.W.2d 428
 
 , 444 (Minn.1983) (stating the elements of a retaliatory discharge claim brought under the Minnesota Human Rights Act).
 
 See generally
 
 Michael Delikat et al.,
 
 Retaliation and Whistleblower Claims,
 
 in Employment Law Yearbook, § 14:3, at 806-07 (Timothy J. Long, ed., 2005) (discussing the elements of retaliation claims under the whistleblower provisions of several federal statutes, including Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Equal Pay Act) [hereinafter Delikat,
 
 Retaliation and Whistleblower Claims
 
 ].
 

 We note that in the first North Carolina appellate decision to address the Whistleblower Act, the Court of Appeals articulated the third element differently, stating that a plaintiff must show that "`the protected conduct was a substantial or motivating factor in the adverse action.'"
 
 Kennedy v. Guilford Technical Cmty. Coll.,
 

 115 N.C.App. 581
 
 , 584,
 
 448 S.E.2d 280
 
 , 282 (1994) (quoting
 
 McCauley v. Greensboro City Bd. of Educ.,
 

 714 F.Supp. 146
 
 , 151 (M.D.N.C.1987));
 
 see also Caudill,
 

 129 N.C.App. at 655
 
 ,
 
 501 S.E.2d at 103
 
 (quoting
 
 Kennedy
 
 in stating the elements of a whistleblower claim);
 
 Hanton v. Gilbert,
 

 126 N.C.App. 561
 
 , 571,
 
 486 S.E.2d 432
 
 , 439 (1997) (same). In support of this formulation of the causation element, the Court of Appeals relied on a federal case arising from a retaliation claim brought under
 
 42 U.S.C. § 1983
 
 for alleged violations of the plaintiff's constitutional rights under the First and Fourteenth Amendments.
 
 Kennedy,
 

 115 N.C.App. at 584
 
 ,
 
 448 S.E.2d at
 
 282 (citing
 
 McCauley,
 

 714 F.Supp. at 151
 
 ). Citing another federal case arising in a different context, the Court of Appeals then described a burden-shifting proof scheme for the causation element. The Court stated that upon the plaintiff's "presentation of a
 
 prima facie
 
 case of retaliation . . . `the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse [employment] action.'"
 
 Id.
 
 at 584-85,
 
 448 S.E.2d at 282
 
 (quoting
 
 Melchi v. Burns Int'l Sec. Servs., Inc.,
 

 597 F.Supp. 575
 
 ,
 
 *207
 
 582 (E.D.Mich.1984)). The Court further stated that "if the defendant-employer meets its burden, the plaintiff must then come forward with evidence to show `that the legitimate reason was a mere pretext for the retaliatory action.'"
 

 Id.
 

 at 585
 
 ,
 
 448 S.E.2d at 282
 
 (quoting
 
 Melchi,
 

 597 F.Supp. at 582
 
 ). Thus, the Court of Appeals concluded, "`[the] plaintiff retains the ultimate burden of proving that the [adverse employment action] would not have occurred had there been no protected activity' engaged in by the plaintiff."
 

 Id.
 

 (quoting
 
 Melchi,
 

 597 F.Supp. at 583
 
 ).
 

 Although the Court of Appeals was correct to hold that courts should generally apply a burden-shifting approach when analyzing the causation element of a whistleblower claim, the analysis set forth in
 
 Kennedy
 
 conflates two distinct proof schemes which apply under different factual circumstances. Moreover, for the reasons detailed below, the
 
 Kennedy
 
 formulation of the causation element applies only when the plaintiff presents
 
 direct evidence
 
 of the defendant's retaliatory animus. We therefore decline to follow
 
 Kennedy's
 
 articulation of the elements of a whistleblower claim. We also take this opportunity to clarify the proof schemes that may apply to claims under the Whistleblower Act and to offer guidance to our trial courts in analyzing the causation element.
 

 There are at least three distinct ways for a plaintiff to establish a causal connection between the protected activity and the adverse employment action under the Whistleblower Act. First, a plaintiff may rely on the employer's "admi[ssion] that it took adverse action against [the plaintiff] [solely] because of the [plaintiff's] protected activity." Delikat,
 
 Retaliation and Whistleblower Claims,
 
 § 14:6, at 838. Such "smoking gun" evidence is rare,
 
 Thomas v. Eastman Kodak Co.,
 

 183 F.3d 38
 
 , 58 n. 12 (1st Cir.1999),
 
 cert. denied,
 

 528 U.S. 1161
 
 ,
 
 120 S.Ct. 1174
 
 ,
 
 145 L.Ed.2d 1082
 
 (2000), as "few employers openly state that they are terminating employees [solely] because of their whistleblowing activities." Daniel P. Westman & Nancy M. Modesitt,
 
 Whistleblowing: The Law of Retaliatory Discharge
 
 Ch. 9 § III.A-4, at 232 (2d ed.2004) [hereinafter Westman & Modesitt,
 
 Whistleblowing
 
 ].
 

 Second, a plaintiff may seek to establish by circumstantial evidence that the adverse employment action was retaliatory and that the employer's proffered explanation for the action was pretextual.
 
 See
 
 Delikat,
 
 Retaliation and Whistleblower Claims,
 
 §§ 14:6, 14:6.2, at 838-55. Cases in this category are commonly referred to as "pretext" cases.
 

 Id.
 

 § 14:6.2, at 839. They are governed by the burden-shifting proof scheme developed by the United States Supreme Court in
 
 McDonnell Douglas Corp. v. Green,
 

 411 U.S. 792
 
 ,
 
 93 S.Ct. 1817
 
 ,
 
 36 L.Ed.2d 668
 
 (1973) and
 
 Texas Department of Community Affairs v. Burdine,
 

 450 U.S. 248
 
 ,
 
 101 S.Ct. 1089
 
 ,
 
 67 L.Ed.2d 207
 
 (1981).
 
 See, e.g., Ross,
 

 759 F.2d at 365-66
 
 (applying this burden-shifting analysis to a claim of retaliatory harassment and discharge brought under 42 U.S.C. § 2000e-3(a));
 
 Tex. Dep't of Human Servs. v. Hinds,
 

 904 S.W.2d 629
 
 , 636 (Tex.1995) (applying this burden-shifting analysis to a claim brought under a state statutory whistleblower provision).
 
 [2]
 

 Under the
 
 McDonnell Douglas/Burdine
 
 proof scheme, once a plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant to articulate a lawful reason for the employment action at issue.
 
 See Burdine,
 

 450 U.S. at 252-53
 
 ,
 
 101 S.Ct. at 1093
 
 ,
 
 67 L.Ed.2d at
 
 215 (citing
 
 McDonnell Douglas,
 

 411 U.S. at 802
 
 ,
 
 93 S.Ct. at 1824
 
 ,
 
 36 L.Ed.2d at 677-78
 
 ). If the defendant meets this burden of production, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered explanation is pretextual.
 

 Id.
 

 (citing
 
 McDonnell Douglas,
 

 411 U.S. at 804
 
 ,
 
 93 S.Ct. at 1825
 
 ,
 
 36 L.Ed.2d at 679
 
 ). The ultimate burden of
 
 *208
 
 persuasion rests at all times with the plaintiff.
 

 Id.
 

 Third, when "the employer claims to have had a good reason for taking the adverse action but the employee has direct evidence of a retaliatory motive," a plaintiff may seek to prove that, even if a legitimate basis for discipline existed, unlawful retaliation was nonetheless a substantial causative factor for the adverse action taken. Delikat,
 
 Retaliation and Whistleblower Claims,
 
 §§ 14:6, 14:6.1, at 838-39. Cases in this category are commonly referred to as "`mixed motive'" cases.
 

 Id.
 

 (citations omitted);
 
 see also
 
 Westman & Modesitt,
 
 Whistleblowing
 
 Ch. 9 § IV.A, at 234-35. Such cases are governed by the proof scheme endorsed by the United States Supreme Court in
 
 Mt. Healthy City Board of Education v. Doyle,
 

 429 U.S. 274
 
 ,
 
 97 S.Ct. 568
 
 ,
 
 50 L.Ed.2d 471
 
 (1977),
 
 superceded by statute on other grounds as stated in Rivera v. United States,
 

 924 F.2d 948
 
 , 954 n. 7 (9th Cir.1991), and extended to Title VII actions in
 
 Price Waterhouse v. Hopkins,
 

 490 U.S. 228
 
 ,
 
 109 S.Ct. 1775
 
 ,
 
 104 L.Ed.2d 268
 
 (1989). Delikat,
 
 Retaliation and Whistleblower Claims,
 
 § 14:6.1, at 838-39;
 
 cf. Lenzer v. Flaherty,
 

 106 N.C.App. 496
 
 , 509,
 
 418 S.E.2d 276
 
 , 284 (1992) (applying
 
 Mt. Healthy
 
 to a claim of civil conspiracy to discharge the plaintiff in retaliation for her exercise of free speech rights),
 
 disc. rev. denied,
 

 332 N.C. 345
 
 ,
 
 421 S.E.2d 348
 
 (1992).
 

 Under the
 
 Mt. Healthy/Price Waterhouse
 
 analysis, once a plaintiff has carried his or her burden to show that protected conduct was a "`substantial'" or "`motivating'" factor for the adverse employment action, the defendant must prove "by a preponderance of the evidence that it would have reached the same decision as to [the employment action at issue] even in the absence of the protected conduct."
 
 Mt. Healthy,
 

 429 U.S. at 287
 
 ,
 
 97 S.Ct. at 576
 
 ,
 
 50 L.Ed.2d at 484
 
 (citation omitted);
 
 see also Price Waterhouse,
 

 490 U.S. at 258
 
 ,
 
 109 S.Ct. at 1794
 
 ,
 
 104 L.Ed.2d at 293
 
 (plurality opinion). In contrast to the "pretext" analysis described in
 
 McDonnell Douglas
 
 and
 
 Burdine,
 
 the ultimate burden of persuasion in a "mixed motive" case may be allocated to the defendant once a plaintiff has established a prima facie case.
 
 Price Waterhouse,
 

 490 U.S. at 258
 
 ,
 
 109 S.Ct. at 1794
 
 ,
 
 104 L.Ed.2d at 293
 
 (plurality opinion);
 

 id.
 

 at 276
 
 ,
 
 109 S.Ct. at 1804
 
 ,
 
 104 L.Ed.2d at 304-05
 
 (O'Connor, J., concurring in the judgment). In order to shift the burden to the defendant, however, the plaintiff must first demonstrate "by
 
 direct evidence
 
 that an illegitimate criterion was a substantial factor in the decision."
 
 490 U.S. at 276
 
 ,
 
 109 S.Ct. at 1804
 
 ,
 
 104 L.Ed.2d at 304
 
 (O'Connor, J., concurring in the judgment) (emphasis added);
 
 [3]
 

 see also TWA v. Thurston,
 

 469 U.S. 111
 
 , 121,
 
 105 S.Ct. 613
 
 ,
 
 83 L.Ed.2d 523
 
 , 533 (1985) (stating that "the
 
 McDonnell Douglas
 
 test is inapplicable where the plaintiff presents direct evidence of discrimination");
 
 Fuller v. Phipps,
 

 67 F.3d 1137
 
 , 1142 (4th Cir.1995) (stating that plaintiffs must present "`direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion'" in order "[t]o earn a mixed-motive instruction") (citation omitted),
 
 overruled in part by Desert Palace, Inc. v. Costa,
 

 539 U.S. 90
 
 ,
 
 123 S.Ct. 2148
 
 ,
 
 156 L.Ed.2d 84
 
 (2003);
 
 Eaton,
 

 2005 WL 1185802
 
 at * 8-9,
 
 2005 U.S. Dist. LEXIS 9545
 
 at *24-25 (applying the
 
 McDonnell Douglas
 
 proof scheme to a whistleblower claim in the absence of direct evidence of retaliation);
 
 Miko v. Comm'n on Human Rights & Opportunities,
 

 220 Conn. 192
 
 , 204,
 
 596 A.2d 396
 
 , 403 (1991) (holding that "[w]hen the plaintiff presents direct evidence of discrimination,"
 
 Price Waterhouse
 
 applies rather than
 
 McDonnell Douglas
 
 ). "Direct evidence" has been defined as "evidence of conduct or statements that both reflect directly the alleged [retaliatory] attitude and that bear directly on the contested
 
 *209
 
 employment decision."
 
 Fuller,
 

 67 F.3d at 1142
 
 . In the context of the
 
 Price Waterhouse
 
 proof scheme, direct evidence does not include "stray remarks in the workplace,. . . . statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself."
 
 Price Waterhouse,
 

 490 U.S. at 277
 
 ,
 
 109 S.Ct. at 1804-05
 
 ,
 
 104 L.Ed.2d at 305
 
 (O'Connor, J., concurring in the judgment). Once the plaintiff establishes a prima facie case including "direct evidence" on the causation element, the
 
 defendant
 
 carries the burden to "show that its legitimate reason, standing alone, would have induced it to make the same decision."
 

 Id.
 

 at 252
 
 ,
 
 109 S.Ct. at 1792
 
 ,
 
 104 L.Ed.2d at 289
 
 (plurality opinion).
 

 We agree with the United States Supreme Court that the essential differences between "pretext" and "mixed-motive" cases necessitate application of different proof schemes, and therefore follow
 
 Price Waterhouse
 
 in holding that claims under the North Carolina Whistleblower Act may be subject to either form of analysis, depending on the evidence presented in each individual case. As the
 
 Price Waterhouse
 
 plurality noted, "[t]he very premise of a mixed-motives case" is that the defendant possessed both legitimate
 
 and
 
 unlawful motives for the adverse employment action taken.
 

 Id.
 

 at 252
 
 ,
 
 109 S.Ct. at 1792
 
 ,
 
 104 L.Ed.2d at 289
 
 . "Where a decision was the product of a mixture of legitimate and illegitimate motives, . . . it simply makes no sense to ask whether the legitimate reason was `
 
 the
 
 "true reason"' for the decision - which is the question asked by
 
 Burdine.
 
 "
 

 Id.
 

 at 247
 
 ,
 
 109 S.Ct. at 1788-89
 
 ,
 
 104 L.Ed.2d at 285
 
 (citation omitted). Thus, rather than require a plaintiff to "squeeze [his or] her proof into
 
 Burdine's
 
 framework," it is appropriate, once a plaintiff has established that an unlawful motive was present, to require the
 
 defendant
 
 to prove by a preponderance of the evidence that the unlawful motive was not a but-for cause of the adverse employment action.
 

 Id.
 

 at 247, 252
 
 ,
 
 109 S.Ct. at 1788, 1791
 
 ,
 
 104 L.Ed.2d at 285, 289
 
 . Shifting the burden of persuasion to the defendant is justified only when the plaintiff presents
 
 direct evidence
 
 of an impermissible motive, however, because (1) the defendant is not "entitled to . . . [a] presumption of good faith where there is direct evidence that it has placed substantial reliance on factors whose consideration is [statutorily] forbidden," and (2) "[a]s an evidentiary matter, where a plaintiff has made this type of strong showing of illicit motivation, the factfinder is entitled to presume that the employer's [retaliatory] animus made a difference to the outcome, absent proof to the contrary from the employer."
 

 Id.
 

 at 271-76
 
 ,
 
 109 S.Ct. at 1801-04
 
 ,
 
 104 L.Ed.2d at 301-04
 
 (O'Connor, J., concurring in the judgment). Thus, only when such "direct evidence" is presented do plaintiffs "qualify for the more advantageous standards of liability applicable in mixed-motive cases."
 
 Fuller,
 

 67 F.3d at 1141
 
 .
 
 [4]
 

 Therefore, claims brought under the Whistleblower Act should be adjudicated according to the following procedures. First, the plaintiff must endeavor to establish a prima facie case of retaliation under the statute.
 
 Cf. Price Waterhouse,
 

 490 U.S. at 278
 
 ,
 
 109 S.Ct. at 1805
 
 ,
 
 104 L.Ed.2d at 306
 
 (O'Connor, J., concurring in the judgment). The plaintiff should include any available "direct evidence" that the adverse employment action was retaliatory along with circumstantial evidence to that effect.
 
 Cf.
 
 id.
 

 Second, "[t]he defendant should . . . present its case, including its evidence as to legitimate . . . reasons for the employment decision."
 

 Id.
 

 Third, "[o]nce all the evidence has been received, the court should determine whether the
 
 McDonnell Douglas
 
 or
 
 Price Waterhouse
 
 framework properly applies to the evidence before it."
 

 Id.
 

 If the plaintiff has demonstrated that he or she engaged in a protected
 
 *210
 
 activity and the defendant took adverse action against the plaintiff in his or her employment, and if the plaintiff has further established by
 
 direct evidence
 
 that "`the protected conduct was a substantial or motivating factor in the adverse [employment] action,'"
 
 Kennedy,
 

 115 N.C.App. at 584
 
 ,
 
 448 S.E.2d at 282
 
 (citation omitted), then the defendant bears the burden to "show that its legitimate reason, standing alone, would have induced it to make the same decision."
 
 Price Waterhouse,
 

 490 U.S. at 252
 
 ,
 
 109 S.Ct. at 1792
 
 ,
 
 104 L.Ed.2d at 289
 
 (plurality opinion). If, however, "the plaintiff has failed to satisfy the
 
 Price Waterhouse
 
 threshold, the case should be decided under the principles enunciated in
 
 McDonnell Douglas
 
 and
 
 Burdine,
 
 with the plaintiff bearing the burden of persuasion on the ultimate issue whether the employment action was taken [for retaliatory purposes]."
 

 Id.
 

 at 278-79
 
 ,
 
 109 S.Ct. at 1805
 
 ,
 
 104 L.Ed.2d at 306
 
 (O'Connor, J., concurring in the judgment).
 

 Applying this analytical framework to the allegations in the instant complaint, we conclude that it is premature to determine whether the instant case should be analyzed according to the "pretext" model of
 
 McDonnell Douglas
 
 and
 
 Burdine
 
 or the "mixed-motive" analysis of
 
 Mt. Healthy
 
 and
 
 Price Waterhouse.
 
 As the trial court's choice between these two analytical models depends on the nature of both the plaintiff's and the defendants' evidence, a trial court may not make a final determination as to which of these two proof schemes applies until "all the evidence has been received."
 

 Id.
 

 at 278
 
 ,
 
 109 S.Ct. at 1805
 
 ,
 
 104 L.Ed.2d at 306
 
 . Indeed, because "[d]iscovery often will be necessary before the plaintiff can know whether both legitimate and illegitimate considerations played a part in the [adverse employment] decision,"
 

 id.
 

 at 247 n. 12,
 
 109 S.Ct. at
 
 1789 n. 12,
 
 104 L.Ed.2d at
 
 285 n. 12, a plaintiff may not be in a position to specify whether the claim is based on the "mixed motive" or "pretext" theory of causation when drafting a complaint. We therefore echo the words of the
 
 Price Waterhouse
 
 plurality in saying that "[n]othing in this opinion should be taken to suggest that a case must be correctly labeled as either a `pretext' case or a `mixed-motives' case from the beginning."
 
 Id.; see also Fuller,
 

 67 F.3d at
 
 1142 n. 2 (stating that "a plaintiff need not decide at the outset whether to classify his case as a `pretext' or a `mixed-motive' case" and that the trial court judge should "make[ ] this determination after evaluating the evidence"). Accordingly, a trial court ruling on a Rule 12(b)(6) motion to dismiss a whistleblowing claim should look at the face of the complaint to determine whether the factual allegations, if true, would sustain a claim for relief under
 
 any
 
 viable theory of causation.
 
 See, e.g., Lynn v. Overlook Dev.,
 

 328 N.C. 689
 
 , 692,
 
 403 S.E.2d 469
 
 , 471 (1991).
 

 II.
 

 We next address defendants' argument that plaintiff's claim is subject to dismissal because it "does not contain facts sufficient to show that [plaintiff] was engaged in [a] `protected activity,'" the first element of a whistleblower claim. Emphasizing plaintiff's omission of the details of his conversation with Trooper Collins in his initial report, defendants assert that "[p]laintiff's lying and misleading inaccuracies were the reason he was disciplined." Defendants further contend that "[l]ying to a supervisor is not [w]histle-blowing and is certainly not a `protected activity'" under the Whistleblowing Act. Finally, defendants contend that "[p]laintiff's [c]omplaint d[oes] not contain facts sufficient to show that his dismissal was for any reason other than his own untruthfulness" in his initial report. We disagree.
 

 As an initial matter, even assuming plaintiff's initial report contained "misleading inaccuracies,"
 
 [5]
 
 we do not agree with defendants' contention that any "admission of untruthfulness" on the part of the plaintiff
 
 *211
 
 necessarily constitutes "a complete bar to recovery" under the Whistleblower Act. The Whistleblower Act prohibits employment retaliation against a state employee who files a report alleging certain categories of misconduct or mismanagement by other state employees or agencies "unless the State employee knows or has reason to believe that the report is inaccurate." N.C.G.S. § 126-85(a). The plain meaning of this proviso is that the Act does not apply to employees who make allegations of mismanagement or wrongdoing which they know or should know to be false. In other words, the Act does not protect
 
 false whistleblowing allegations,
 
 unless the plaintiff had no reason to know of their falsehood.
 
 Cf.
 
 Westman & Modesitt,
 
 Whistleblowing
 
 Ch. 2 § II.E.2, at 52 (noting that "false [whistleblowing] allegations serve no public interest"); Lois A. Lofgren,
 
 Whistleblower Protection: Should Legislatures and the Courts Provide a Shelter to Public and Private Sector Employees Who Disclose the Wrongdoing of Employers?,
 

 38 S.D. L.Rev. 316
 
 , 326 (1993) (stating that a "common thread between the various state [whistleblower] laws is the requirement that an employee's complaint be made in good faith"). Nothing in the language or legislative history of the Act suggests that the General Assembly intended to render the Act inapplicable when an employee's whistleblowing allegation appears in a supplemental or amended report, rather than an initial report. Indeed, such a construction would undermine the legislatively declared policy of this state that the reporting of various forms of governmental mismanagement and wrongdoing shall be "encouraged." N.C.G.S. § 126-84(a). Moreover, as a simple matter of logic, the failure to make an allegation of wrongdoing in an
 
 initial report
 
 does not render an
 
 amended or supplemental report
 
 which contains such an allegation "inaccurate" under N.C.G.S. § 126-85(a).
 

 More importantly, defendants' assertion that the "lying and misleading inaccuracies" in plaintiff's initial report were the true reason for plaintiff's dismissal is merely a
 
 factual allegation
 
 - one that is directly contradicted by the factual allegations in plaintiff's complaint. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a trial court must "take all allegations of fact in the complaint as true."
 
 Cage v. Colonial Bldg. Co.,
 

 337 N.C. 682
 
 , 683,
 
 448 S.E.2d 115
 
 , 116 (1994). Although plaintiff acknowledged in his complaint that the
 
 professed
 
 reason for his dismissal was his purported violation of the Truthfulness Directive, he also expressly alleged that the
 
 actual
 
 reason for his termination was his disclosure of a possible abuse of authority in his
 
 amended
 
 statement. Specifically, plaintiff alleged that "[d]efendants discharged [p]laintiff because [p]laintiff reported to his superiors, both verbally and in writing, information in the
 
 Amended Statement
 
 that supports a contention that the [t]roopers violated State or federal law, rule or regulation and exercised gross abuse of authority in the apprehension and arrest of Owen Nichols." (Emphasis added.) Accordingly, plaintiff has stated a claim for relief under N.C.G.S. § 126-84(a)(1) and (5), and the Court of Appeals erred in affirming the dismissal of plaintiff's whistleblower claim.
 

 III.
 

 Finally, we address defendants' argument that dismissal was proper because plaintiff failed to exhaust his administrative remedies in the Office of Administrative Hearings (OAH) before filing his complaint in the trial court. Defendants contend that plaintiff's petition for a contested case hearing, which was filed in the OAH prior to the initiation of the instant lawsuit, "was a[w]histleblower action." Defendants further assert that plaintiff failed to exhaust his administrative remedies before filing the instant complaint. Based on these contentions, defendants argue that plaintiff's claim is barred by the doctrine of administrative exhaustion. We disagree.
 

 As the Court of Appeals has correctly noted, "[t]wo statutes provide avenues to redress violations of the Whistleblower statute."
 
 Swain v. Elfland,
 

 145 N.C.App. 383
 
 , 389,
 
 550 S.E.2d 530
 
 , 535,
 
 cert. denied,
 

 354 N.C. 228
 
 ,
 
 554 S.E.2d 832
 
 (2001). First, the Whistleblower Act expressly provides that "any State employee injured by a violation of G.S. 126-85 may maintain an action in superior
 
 *212
 
 court." N.C.G.S. § 126-86 (2003). Second, the SPA provides that state employees may file a petition for a contested case hearing in the OAH for "[a]ny retaliatory personnel action that violates G.S. 126-85," N.C.G.S. § 126-34.1(a)(7) (2003). Viewing these two statutes
 
 in pari materia,
 
 we agree with the Court of Appeals that they "are not irreconcilable," but "create alternative means for an aggrieved party to seek relief."
 
 Wells v. N.C. Dep't of Corr.,
 

 152 N.C.App. 307
 
 , 313,
 
 567 S.E.2d 803
 
 , 808-09 (2002). In other words, a "state employee may choose to pursue a [w]histleblower claim in either [a judicial or an administrative] forum, but not both."
 
 Swain,
 

 145 N.C.App. at 389
 
 ,
 
 550 S.E.2d at 535
 
 .
 

 We agree with defendants that, as a general proposition, if a state employee chooses to forego the judicial forum and initiates a whistleblower claim in the OAH, the employee's only recourse to superior court is to petition for judicial review of the final agency decision of the State Personnel Commission (SPC) pursuant to N.C.G.S. § 150B-43 (2003). As the Court of Appeals reasoned, to allow a plaintiff to "maintain an administrative action and an action in superior court simultaneously . . . . would allow plaintiff two bites of the apple, could lead to the possibility that different forums would reach opposite decisions, [and could] engender needless litigation in violation of the principles of collateral estoppel."
 
 Swain,
 

 145 N.C.App. at 389
 
 ,
 
 550 S.E.2d at 535
 
 . In addition, the General Assembly has prescribed specific procedures for the adjudication and appeal of administrative complaints filed under the SPA and the North Carolina Administrative Procedure Act (APA).
 
 See generally N.C. Dep't of Env't & Natural Res. v. Carroll,
 

 358 N.C. 649
 
 , 657-58,
 
 599 S.E.2d 888
 
 , 893-94 (2004). Specifically, an employee who opts to file a retaliation claim as an administrative action with the OAH has a right to appeal an adverse decision to the SPC. N.C.G.S. § 126-36(b) (2003). The final agency decision of the SPC is subject to judicial review upon petition of either party in the Superior Court of Wake County or the county where the petitioner resides. N.C.G.S. §§ 126-37(b2), 150B-45 (2003). As we have previously stated, "[t]he avoidance of untimely intervention in the administrative process is a long recognized policy of judicial restraint."
 
 Presnell v. Pell,
 

 298 N.C. 715
 
 , 722,
 
 260 S.E.2d 611
 
 , 615 (1979). Moreover, "[t]his policy acquires the status of a jurisdictional prerequisite when the legislature has explicitly provided the means by which a party may seek effective judicial review of particular administrative action."
 

 Id.
 

 Thus, when an employee opts to avail himself or herself of the administrative procedures for adjudicating whistleblower claims as set forth in the SPA and APA, such procedures are normally "`the exclusive means for obtaining . . . judicial review.'"
 

 Id.
 

 (quoting
 
 Snow v. N.C. Bd. of Architecture,
 

 273 N.C. 559
 
 , 570-71,
 
 160 S.E.2d 719
 
 , 727 (1968)).
 

 We disagree, however, with the factual predicate of defendants' argument - that plaintiff "raised a[w]histleblower claim at the OAH." The only evidence of record concerning plaintiff's administrative action is a copy of his petition for a contested case hearing, a standard form document.
 
 [6]
 
 In that petition, plaintiff indicated two distinct grounds for his request for an administrative hearing by checking the appropriate choices printed on the form. First, plaintiff indicated that he was "discharge[d] without just cause." Second, plaintiff indicated that he was terminated due to "discrimination and/or retaliation for opposition to alleged discrimination," and that "the type of discrimination" was "[r]ace." In his only textual elaboration of the basis for his petition, plaintiff simply stated, "I was dismissed as a Highway Patrolman without just cause based upon a complete misinterpretation of my actions and statements re: a case of excessive force."
 

 Nowhere in his petition did plaintiff reference the Whistleblower Act or allege that his employment was terminated in retaliation for his reporting a potential abuse of authority by other officers in the SHP. Although plaintiff's allegation that he was dismissed
 
 *213
 
 "without just cause based upon a complete misinterpretation of [his] actions and statements" is not inconsistent with the factual allegations in his subsequently filed whistleblower claim, the language in his petition in no way states a claim under the Whistleblower Act. Indeed, of the eleven specific statutory grounds for filing a contested case under the SPA,
 
 see
 
 N.C.G.S. § 126-34.1 (2003), plaintiff's petition states only two: (1) that he was terminated without "just cause" in violation of N.C.G.S. § 126-35, and (2) that he was terminated because of his race in violation of Chapter 168A.
 
 See
 
 N.C.G.S. § 126-34.1(a)(1), (2). Conspicuously absent from plaintiff's petition is any allegation that his dismissal constituted a "retaliatory personnel action that violates [the Whistleblower Act]," an entirely separate statutory ground for seeking an administrative hearing in the OAH.
 
 See
 
 N.C.G.S. § 126-34.1(a)(7). Accordingly, the doctrine of administrative exhaustion does not prevent plaintiff from filing a whistleblower claim in superior court.
 
 [7]
 

 In conclusion, plaintiff's allegations are sufficient to overcome defendants' Rule 12(b)(6) motion to dismiss. Moreover, plaintiff is not barred from bringing his claim by the doctrine of administrative exhaustion. The decision of the Court of Appeals is therefore reversed, and the case is remanded to that Court for consideration of plaintiff's remaining assignment of error.
 

 REVERSED AND REMANDED.
 

 We note that the United States Court of Appeals for the Fifth Circuit overruled
 
 Goff
 
 in
 
 Carter v. South Central Bell,
 

 912 F.2d 832
 
 , 840-41 (5th Cir.1990) (holding that retaliation claims are not cognizable under
 
 42 U.S.C. § 1981
 
 ),
 
 cert. denied,
 

 501 U.S. 1260
 
 ,
 
 111 S.Ct. 2916
 
 ,
 
 115 L.Ed.2d 1079
 
 (1991). As noted by the District Court for the Eastern District of Louisiana, however,
 
 Carter
 
 itself was superceded by statute when Congress amended section 1981 by enacting the Civil Rights Act of 1991.
 
 Wilson v. Shell Oil Co.,
 

 1995 WL 311911
 
 , at *5,
 
 1995 U.S. Dist. LEXIS 7305
 
 , at *15 (E.D.La. May 18, 1995) (magistrate judge).
 

 In a case of first impression brought under N.C.G.S. § 126-36, which prohibits retaliation against state employees for their opposition to certain forms of discrimination, this Court "look[ed] to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases."
 
 N.C. Dep't of Corr. v. Gibson,
 

 308 N.C. 131
 
 , 136,
 
 301 S.E.2d 78
 
 , 82 (1983). Like
 
 Gibson,
 
 the instant "case is one of first impression in this jurisdiction[,] and we [therefore] look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied."
 

 Id.
 

 Because there was no majority opinion in
 
 Price Waterhouse,
 
 Justice O'Connor's concurring opinion, which represented the narrowest ground for decision, constitutes the holding of that case.
 
 See Price Waterhouse,
 

 490 U.S. at 280
 
 ,
 
 109 S.Ct. at 1806
 
 ,
 
 104 L.Ed.2d at 307
 
 (Kennedy, J., dissenting) (citing Justice O'Connor's concurring opinion for the proposition that the "actual holding of today's decision" is that "[t]he shift in the burden of persuasion occurs only where a plaintiff proves by
 
 direct evidence
 
 that an unlawful motive was a substantial factor actually relied upon in making the decision" (emphasis added)).
 

 We acknowledge that, subsequent to the United States Supreme Court's decision in
 
 Price Waterhouse,
 
 "Congress codified a new evidentiary rule for mixed-motive cases arising under Title VII" of the Civil Rights Act of 1964 that abrogates Justice O'Connor's direct evidence requirement and permits plaintiffs to avail themselves of the mixed-motive standard in Title VII actions without direct evidence of unlawful discrimination.
 
 Desert Palace, Inc. v. Costa,
 

 539 U.S. 90
 
 , 102,
 
 123 S.Ct. 2148
 
 , 2155,
 
 156 L.Ed.2d 84
 
 , 96 (2003) (O'Connor, J., concurring). This statutory amendment, however, applies only to claims brought under Title VII of the Civil Rights Act of 1964.
 

 Id.
 

 Plaintiff concedes in his complaint that he did not disclose the details of his conversation with Trooper Collins in his initial statement, but nonetheless maintains that his initial statement was "truthful and complied with the instruction of [First Sergeant] Combs that [he] memorialize what [he] saw at the [i]ncident." Because it is not necessary to our disposition of this case, we do not address whether plaintiff's initial report is best characterized as "misleading" and "inaccurate" or "truthful" in light of First Sergeant Combs's alleged instructions.
 

 Neither the record on appeal nor the allegations in plaintiff's complaint reveal anything about the procedural history of plaintiff's administrative action other than the fact that a petition for contested case hearing was filed.
 

 In holding that the doctrine barred plaintiff's action, the Court of Appeals noted that "[p]laintiff admits in his complaint that he `did not exhaust his potential administrative remedies.'"
 
 Newberne,
 
 168 N.C.App. at ___,
 
 606 S.E.2d at 746
 
 . Taken in context, however, this statement in plaintiff's complaint strongly supports his assertion that he did
 
 not
 
 allege a violation of the Whistleblower Act in his administrative action. Plaintiff stated that he "did not exhaust his
 
 potential
 
 administrative remedies for his claim of retaliation in that the same would have been futile and inadequate" because "
 
 [h]ad plaintiff filed a petition for Contested Case Hearing for retaliation,
 
 " he would have been (1) "deprived of his right to a trial by jury," (2) "deprived of his right to sue any defendant individually," and (3) "deprived of his right to be awarded treble damages against individuals found to be in willful violation." (Emphasis added.) Thus, plaintiff's complaint is entirely consistent with his contention on appeal that his petition for a contested case hearing did
 
 not
 
 state a claim of retaliation under the Whistleblower Act, in addition to explaining his reasons for not doing so.