IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-673

Filed 21 May 2025

Burke County, No. 23CVD000619-110

LEGAL IMPACT FOR CHICKENS, Plaintiff,

v.

CASE FARMS, L.L.C., CASE FOODS INC.,
And CASE FARMS PROCESSING, INC., Defendants.

Appeal by Plaintiff from order entered 15 December 2023 by Judge Wesley W. Barkley in Burke County District Court. Heard in the Court of Appeals 11 February 2025.

*Davis Hartman & Wright, LLP, by R. Daniel Gibson, for Plaintiff-Appellant.*

*Hamilton Stephens Steele & Martin PLLC, by Rebecca K. Cheny, Mark R. Kutny, and Jacklyn Bragano, for Defendant-Appellees.*

*Ward and Smith, P.A., by Christopher S. Edwards, for Beautiful Together, In., amicus curiae.*

*Michael Best & Frederich LLP, by Michael G. Schietzelt and Luke Taylor, for Dega Mobile Veterinary Care, Dr. Laura Cochrane, and Dr. Martha Smith-Blackmore, amici curiae.*

*Milberg Coleman Bryson Phillips Grossman PLLC, by Lucy N. Inman and Katharine W. Batchelor, for The Cornucopia Institute, Farm Animal Concerns Trust, and The Northeast Organic Dairy Producers Alliance, amicus curiae.*

*Jordan Price Wall Gray Jones & Carlton PLLC, by H. Weldon Jones, III, for The North Carolina Poultry Federation, Inc., amicus curiae.*

*Phillip Jacob Parker Jr., Stephen A Woodson, Meghan N. Cook, and Stacy Revels Sereno, for North Carolina Farm Bureau Federation, Inc. & North Carolina Pork Counsil, amici curiae.*

CARPENTER, Judge.

Legal Impact for Chickens ("Plaintiff") appeals from the trial court's 15 December 2023 order (the "Order") granting the motion to dismiss filed by Case Farms, LLC, Case Foods, Inc., and Case Farms Processing, Inc. (collectively, "Defendants"). On appeal, Plaintiff argues the trial court erred by granting Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). After careful review, we affirm the Order.

## I. Factual & Procedural Background

This case concerns an action initiated by Plaintiff, a non-profit organization, against: Case Farms LLC, a poultry producer; Case Foods, Inc., Case Farms' parent corporation; and Case Farms Processing, Inc., a subsidiary of Case Foods. Generally speaking, Defendants are in the business of raising and slaughtering broiler-meat chickens for commercial sale. The allegations in Plaintiff's complaint concern Defendants' conduct in connection with the growth, slaughter, and sales process at two locations in Morganton, North Carolina: 5067 Foreman Street (the "Hatchery") and 121 Rand Street (the "Slaughterhouse").

Defendants' process for raising and slaughtering chickens can be summarized as follows. First, chicks gestate as eggs in the "setter room" at the Hatchery. Then, when the eggs are expected to hatch, Defendants move the eggs to a "hatcher." Once

the chicks hatch, Defendants place the chicks in rectangular-shaped trays to be transported. Defendants next place the trays on a system of conveyor belts where pistons redirect or push the trays to various locations at the Hatchery. After the chicks are moved using the conveyor-belt system, Defendants drive the chicks to affiliated "grower farms" where they are raised until they are ready to be slaughtered. Once the chickens are ready to be slaughtered, Defendants drive the chickens from the "grower farms" to the Slaughterhouse. At the Slaughterhouse, Defendants paralyze the chickens in a stun bath, cut their necks using automated machinery, and place them in a scalder tank filled with boiling water. Finally, machines process the slaughtered chickens for human consumption.

On 24 May 2023, Plaintiff filed a complaint and request for injunctive relief, alleging Defendants violated section 19A-1 of our General Statutes of North Carolina, entitled the Protection of Animals Act (the "PAA"). Thereafter, on 19 June 2023, Plaintiff filed an amended complaint and request for injunctive relief. On 16 August 2023, Defendants filed a motion to dismiss and answer to Plaintiff's first amended complaint. Then, Plaintiff amended its first complaint with Defendants' written consent. Thereafter, Plaintiff filed its second amended complaint (the "Complaint") alleging Defendants "engaged in intentional, affirmative, and reckless acts of neglect and extreme violence causing unjustifiable and unnecessary physical pain, suffering, and death towards the animals under its care and control."

To summarize, Plaintiff alleged Defendants' treatment of chickens at various

stages throughout the hatching and slaughtering process amounted to animal cruelty. Specifically, Plaintiff alleged that Defendants: (1) starve chicks that hatch early in the setter room; (2) allow chicks to overheat and die in the Hatchery; (3) allow chicks to be maimed and crushed by the conveyor-belt system; (4) crush chicks between transport trays; (5) allow chicks to fall to their death through the floor of transport trucks; (6) intentionally run over chickens with their vehicles; (7) allow chickens to overheat in the transport trucks; (8) bury injured chickens alive under dead chickens; and (9) boil chickens alive. Plaintiff did not allege that Defendants' hatching and slaughtering operation as a whole was illegal or otherwise prohibited by law.

On 15 November 2023, Defendants filed an answer and motion to dismiss under Rule 12(b)(6). On 15 December 2023, following a hearing on the matter, the trial court entered the Order. In the Order, the trial court concluded that the PAA was "inapplicable to Defendants" because they were exempt from suit under sections 19A-1(2) and (3). On 30 January 2024, Plaintiff filed notice of appeal.[1]

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(2) (2023).

## III. Issue

---

[1] The parties stipulated to the Order being served on Plaintiff on 2 January 2024. Thus, Plaintiff's notice of appeal was timely since the Order was served on Plaintiff more than three days after it was entered. *See* N.C. R. App. P. 3(c)(2).

The sole issue is whether the trial court erred by granting Defendants' motion to dismiss for failure to state a claim upon which relief may be granted.

## IV. Analysis

Plaintiff makes two assertions in support of its primary argument that the trial court erred by granting Defendants' motion to dismiss. First, Plaintiff asserts the trial court improperly considered questions of fact and mixed questions of law and fact at the 12(b)(6) stage. Next, Plaintiff asserts that Defendants are not exempt from suit under the PAA because their individual systems and processes are either unlawful or not conducted for the purpose of producing poultry or food for human or animal consumption. For the reasons outlined below, we disagree with Plaintiff.

### A. The PAA

The PAA provides a "civil remedy for the protection and humane treatment of animals in addition to any criminal remedies that are available . . . ." N.C. Gen. Stat. § 19A-2 (2023). Under this statutory scheme, any "person" can seek a preliminary injunction against "any person who owns or has possession of an animal" by filing a verified complaint alleging "cruelty to an animal." *Id.* at § 19A-3. "Cruelty [to an animal]" and "cruel treatment [of an animal]" are defined by the PAA as "every act, omission, or neglect whereby unjustifiable physical pain, suffering, or death is caused or permitted." *Id.* at § 19A-1. The PAA also provides that "person has the same meaning as in [N.C. Gen. Stat. §] 12-3." *Id.* at § 19A-1(3); *see* N.C. Gen. Stat. § 12-3(6) (2023) ("The word 'person' shall extend and be applied to bodies politic and

corporate, as well as to individuals, unless the context clearly shows to the contrary.").

But the PAA does not apply, in pertinent part, to:

> *Lawful activities* conducted . . . for purposes of production of . . . poultry [or]
>
> *Lawful activities* conducted for the primary purpose of providing food for human or animal consumption.

N.C. Gen. Stat. § 19A-1.1(2) and (3) (emphases added).

## B. Standard of Review

This Court reviews a trial court's order granting a Rule 12(b)(6) motion to dismiss de novo. *See Taylor v. Bank of America, N.A.*, 382 N.C. 677, 679, 878 S.E.2d 798, 800 (2022) (citing *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013)). Likewise, we review issues of statutory construction de novo. *Wilson v. Funeral Directors Inc. v. N.C. Bd. of Funeral Serv.*, 244 N.C. App. 768, 773, 781 S.E.2d 507, 510 (2016) (citations omitted). "'Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

Motions to dismiss brought under Rule 12(b)(6), "test[] the legal sufficiency of [a] complaint." *Proctor v. City of Jacksonville*, ___ N.C. App.___, 910 S.E.2d 269, 273 (2024); *see Estate of Graham v. Lambert*, 385 N.C. 644, 656, 898 S.E.2d 888, 899 (2024) ("At the pleading stage, a 12(b)(6) motion tests the law of the claim, not the

facts which support it.") (internal quotation marks and citation omitted). When reviewing the trial court's grant of a motion to dismiss, we consider "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Bridges*, 366 N.C. at 541, 742 S.E.2d at 794. We treat factual allegations as true and ignore legal conclusions. *See Proctor*, ___ N.C. App. at ___, 910 S.E.2d at 273.

It is proper for the trial court to dismiss the claim if one of the following is true: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Newberne v. Dep't of Crime Control & Pub. Safety*, 359 N.C. 782, 784, 618 S.E.2d 201, 204 (2005) (quotation marks and citation omitted).

### C. Rule 12(b)(6) Limitations

First, Plaintiff asserts it was improper for the trial court to conclude Defendants were exempt from suit under the PAA at the 12(b)(6) stage because determining Defendants' exemption status involved questions of fact and mixed questions of law and fact. Specifically, Plaintiff argues the question of whether Defendants activities are *lawful* is a mixed question of law and fact because it requires applying legal principles to the allegations in the complaint. Likewise, Plaintiff argues the determination of the *purpose* of Defendants' activities is a pure question of fact. In Plaintiff's view, these questions should have been presented to a

jury for determination.

"Questions of statutory interpretation are ultimately questions of law for the courts . . . ." *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 547, 809 S.E.2d 853, 858 (2018). Stated differently, "[t]he interpretation of statutory language is a matter of law, and thus, appropriately resolved upon a Rule 12(b)(6) motion." *Peacock v. Shinn*, 139 N.C. App. 487, 497, 533 S.E.2d 842, 849 (2000).

Here, the trial court, in ruling on Defendants' 12(b)(6) motion, resolved the issue of whether Defendants were exempt under the PAA. Before reaching this conclusion, the trial court interpreted the relevant provisions of the PAA and ultimately ruled that Defendants' pertinent activity—commercial raising and slaughtering of chickens—was exempt from suit. Indeed, in the Order the trial court determined the PAA was "inapplicable to Defendants." This language demonstrates the trial court's determination of Defendants' exemption status was rooted in statutory interpretation. *See N.C. Bar & Tavern Ass'n v. Cooper*, 293 N.C. App. 402, 411, 901 S.E.2d 355, 364 (2024) (determining the language used by the trial court in its order indicated the trial court relied on statutory interpretation). Accordingly, the trial court did not improperly resolve issues of fact or mixed issues of law and fact at the 12(b)(6) stage. Instead, the trial court properly addressed a question of law— whether Defendants were exempt from suit under the PAA.

## C. Defendants' Exemption Status

Next, Plaintiff asserts that Defendants are not exempt from the PAA because

some of the individual systems and processes Defendants employ in their poultry-production operation are either unlawful or not for the purpose of producing poultry or providing food for consumption. In other words, Plaintiff seeks to narrow our focus from Defendants' operation as a whole to individual steps within Defendants' poultry-production process. According to Plaintiff, every stage in Defendants' operation should be analyzed for its lawfulness and purpose. Conversely, Defendants argue they are exempt because their entire operation—commercial raising and slaughtering of chickens—is both lawful and conducted for the purpose of producing food for consumption.

The parties' arguments require us to interpret the relevant exemptions under the PAA. In doing so, we consider whether our General Assembly intended to exempt Defendants from suit under the circumstances of this case, with the outcome turning on how the relevant "activity" is defined.

"Our primary goal in construing a statute is 'to ensure that the purpose of the legislature, the legislative intent, is accomplished.'" *Wynn v. Frederick*, 385 N.C. 576, 581, 895 S.E.2d 371, 377 (2023) (quoting *Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991)). Because the best indicia of legislative intent is the plain language of the statute, our analysis begins there. *Id.* at 581, 895 S.E.2d at 377. When interpreting the plain language of a statute, "undefined words [] 'must be given their common and ordinary meaning.'" *State v. Rieger*, 267 N.C. App. 647, 649, 833 S.E.2d 699, 701 (2019) (quoting *In re Clayton-*

*Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202 (1974)). "Absent precedent, we look to dictionaries to discern a word's common meaning." *N.C. Dep't of Env't Quality v. N.C. Farm Bureau Fed'n*, 291 N.C. App. 188, 193, 895 S.E.2d 437, 441 (2023) (citing *Midrex Techs., Inc. v. N.C. Dep't of Rev.*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016)). "If the plain language of the statute is unambiguous, we 'apply the statute[] as written." *Wynn*, 385 N.C. at 581, 895 S.E.2d at 377 (quoting *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 202, 675 S.E.2d 641, 649 (2009)) (alteration in original).

"If the plain language of the statute is ambiguous, however, we then look to other methods of statutory construction such as the broader statutory context, 'the structure of the statute[,] and certain canons of statutory construction' to ascertain the legislature's intent." *Id.* at 581, 895 S.E.2d at 377 (quoting *Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991)) (alteration in original). Further, we may also "consider the policy objectives prompting passage of the statute and should avoid a construction which defeats or impairs the purpose of the statute." *O&M Indus. v. Smith Eng'g Co.*, 360 N.C. 263, 268, 624 S.E.2d 345, 348 (2006). "[R]emedial statute[s] must be construed broadly 'in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained." *Id.* at 268, 624 S.E.2d at 348 (quoting *Puckett v. Sellars*, 235 N.C. 264, 267, 69 S.E.2d 497, 499 (1952)).

This panel appears to be the first to interpret the PAA exemptions at issue in this case. Accordingly, we begin by examining the plain language of the PAA to

determine which "activities" the General Assembly intended to exempt from suit. The PAA provides, in pertinent part, that an individual or entity is immune from suit if they are engaging in:

> *Lawful activities* conducted . . . for purposes of production of . . . poultry [or]

> *Lawful activities* conducted for the primary purpose of providing food for human or animal consumption.

N.C. Gen. Stat. § 19A-1.1(2) and (3) (emphases added).

The phrase "lawful activities" is not defined by the PAA or precedent. Thus, we consult dictionaries to discern the common meaning of the words "lawful" and "activities." *See N.C. Dep't of Env't Quality*, 291 N.C. App. at 193, 895 S.E.2d at 441 (citing *Midrex Techs., Inc*, 369 N.C. at 258, 794 S.E.2d at 792). According to Black's Law Dictionary, "lawful" means "[n]ot contrary to law; permitted by law." *Lawful*, Black's Law Dictionary (8th ed. 2004). "Activities," the plural form of "activity," means "[t]he collective acts of one person or of two or more people engaged in a common enterprise." *Activity*, Black's Law Dictionary (8th ed. 2004). Thus, the phrase "lawful activities" under the PAA means one's *collective acts* or behaviors, not contrary to law. Accordingly, we find the PAA to be unambiguous and apply the statute as written. *See Wynn*, 385 N.C. at 581, 895 S.E.2d at 377.

The process of raising and slaughtering chickens is comprised of a series of tasks conducted for a common purpose—to produce poultry. Therefore, contrary to Plaintiff's interpretation, we hold the exempted activity is not each individual step

within the commercial poultry-production process, but rather the entire process itself. Defendants' operation involves a collective series of tasks in pursuit of a common outcome—to produce and sell poultry products for profit. Accordingly, we conclude the General Assembly intended to exempt Defendants' commercial poultry-production operation as a whole from suit under the PAA, provided the operation is permitted by law. Because Plaintiff's complaint does not and cannot support a claim that Defendants' operation of raising and processing poultry is illegal or otherwise prohibited by law, the trial court properly granted Defendants' motion to dismiss. *See Newberne*, 359 N.C. at 784, 618 S.E.2d at 204.

## V. Conclusion

Under the circumstances of this case, Defendants' poultry-production operation is exempt under the PAA. Accordingly, we affirm the Order.

AFFIRMED.

Judges ARROWOOD and MURRY concur.