GAVIN DEMURRY, PLAINTIFF v. NORTH CAROLINA DEPARTMENT OF CORRECTIONS (SIC), BOYD BENNETT, DARLYN WHITE, DUNCAN DAUGHTERY (SIC), TED HOWELL, DANNY SEIFERT (SIC), WAYNE HARRIS, ANTHONY FLORENCE, EACH DEFENDANT, WHO IS AN INDIVIDUAL, INDIVIDUALLY AND IN HIS/HER OFFICIAL CAPACITY, JOINTLY AND SEVERALLY LIABLE, DEFENDANTS

No. COA08-442

(Filed 3 March 2009)

**1. Appeal and Error— appealability—denial of summary judgment—sovereign immunity**

Appeals by the Department of Correction and an assistant superintendent of a correctional facility (Florence) in his official capacity from the denial of summary judgment were properly before the Court of Appeals because defendants raised sovereign immunity, public official immunity, and qualified immunity as affirmative defenses. The denial of summary judgment for another defendant who did not raise affirmative defenses was not immediately appealable.

**2. Appeal and Error— appealability—denial of summary judgment—officials sued in individual capacity—not subject to two trials**

The denial of summary judgment for two state officials on claims in their individual capacity was interlocutory and not ripe

for appellate review, despite their contention that they were subject to two trials because they were also sued in their official capacities. The State would be the defendant in any suit brought against them in their official capacities.

### 3. Conversion— claim against official—sovereign immunity

A claim for conversion against the Department of Correction and an assistant superintendent in his official capacity was barred by sovereign immunity. The Department of Correction is a state agency created for the performance of essentially governmental functions and sovereign immunity extends to an assistant superintendent of a county correctional facility in his official capacity when immunity has not been waived.

### 4. Civil Rights— 1983 claim against official—monetary damages only—summary judgment

The trial court should have granted summary judgment for the Department of Correction and an assistant superintendent in his official capacity on a claim for violation of 42 U.S.C. § 1983 arising from a personnel matter where plaintiff sought only monetary damages. Neither a State nor its officials in their official capacities are "persons" under § 1983 when the remedy sought is monetary damages.

### 5. Public Officers and Employees— Correction employee—job transfer—Whistleblower claim—no adverse claim

The trial court erred by denying summary judgment for the Department of Correction and an assistant superintendent on a Whistleblower claim arising from a personnel decision. Plaintiff did not forecast evidence that defendant took adverse actions against plaintiff.

Appeal by defendants from order signed 31 December 2007 by Judge Gary Trawick in Onslow County Superior Court. Heard in the Court of Appeals 1 December 2008.

*Law Offices of Kenneth N. Glover, PLLC, by Kenneth N. Glover, for plaintiff-appellee.*

*Roy Cooper, Attorney General, by Thomas H. Moore, Assistant Attorney General, for defendants-appellants N.C. Department of Correction and Anthony Florence.*

*Roy Cooper, Attorney General, by Neil Dalton, Special Deputy Attorney General, for defendant-appellant Duncan Daughtry.*

MARTIN, Chief Judge.

The North Carolina Department of Correction ("NCDOC"), Anthony Florence, and Duncan Daughtry appeal from an order denying their motions for summary judgment in this action in which plaintiff alleged claims for conversion, violation of North Carolina's Whistleblower Act pursuant to N.C.G.S. §§ 126-84 through 126-88, and violation of 42 U.S.C. § 1983. We reverse the order of the trial court denying defendant NCDOC's motion for summary judgment as to all claims alleged against it, and reverse the order denying defendant Florence's motion for summary judgment as to all claims alleged against him in his official capacity. We dismiss defendant Daughtry's appeal.

According to the record before us, plaintiff Gavin DeMurry was employed by defendant NCDOC as a correctional officer at Carteret Correctional facility in Newport, North Carolina. He worked for defendant NCDOC from October 2000 until his resignation in February 2006. When plaintiff began working for defendant NCDOC, he worked the second-shift rotation as a correctional officer supervising inmates in the unit at Carteret Correctional. In 2003, plaintiff was reassigned to work with Carteret Correctional's Community Work Program ("CWP"), which puts inmates to work providing labor in manual labor projects for local governments. According to plaintiff's deposition, he did not consider this reassignment to the CWP to be a promotion, and did not receive any salary increase as a result thereof. In his new post, plaintiff began supervising the work of inmates on CWP's "litter squad" and, due to his construction background, plaintiff was later assigned to work in the CWP's "cement program," which was said to have worked on such projects as reconstructing shelters and building seawalls. Plaintiff continued in this position until September 2005.

On or about 21 September 2005, as a result of allegations that plaintiff had "created a 'hostile work' environment by making repeated threatening remarks" toward two other correctional officers who worked with him on his CWP squad, defendant Anthony Florence, Assistant Superintendent of Carteret Correctional, was assigned to conduct an investigation. Plaintiff denied knowing anything about the charges. However, as a result of his investigation, defendant Florence determined that an incident did occur and subsequently reassigned plaintiff and the two officers to other posts. Plaintiff's reassignment allowed plaintiff to work the same shift hours and receive the same rate of pay as his post with the CWP.

Plaintiff was out on leave at the end of September 2005 from a reported off-duty injury when he learned, by a telephone call from a fellow officer on the CWP, of his reassignment. Plaintiff also received a letter dated 30 September 2005 from defendant Florence informing plaintiff that, effective 4 October 2005, he was "permanent[ly]" "reassigned to the Correctional Officer A-1 rotation from the Community Work Crew position" in order "to maintain the orderly operations of [the Carteret Correctional] facility." Plaintiff did not return to work after September 2005, and submitted his resignation on 6 February 2006.

On 17 October and 24 October 2005, defendant Boyd Bennett, Director of NCDOC's Division of Prisons, received two letters from plaintiff complaining about his reassignment and seeking to be reassigned to his position with the CWP or to a post with a similar NCDOC inmate work program. Plaintiff further complained that defendant Ted Howell, his immediate supervisor on the CWP, ordered plaintiff to use his personal tools on CWP projects, and that those tools were now missing or damaged due to negligence by other employees. Defendant Bennett assigned defendant Darlyn White, Eastern Region Operations Manager of NCDOC Division of Prisons, to investigate plaintiff's claims. Defendant White sent plaintiff a letter on or about 5 November 2005 stating that "it was determined by staff that [plaintiff] and [his] co-workers were having conflicts on the job," and that "[t]he staff at Carteret [Correctional] attempted to resolve [the] conflicts with no avail." As a result, "[t]he staff as a final measure decided to change all who were involved duty post [sic]," and "made a decision to re-adjust [plaintiff's] Post Assignment based on the needs of the Department."

On 6 November 2005, plaintiff sent a response letter to defendant White reiterating his complaints about his post reassignment and about his missing and damaged personal tools. Since defendants Bennett and White determined that this letter "raised no new issues for [defendant White] to investigate" and that defendant White "had properly responded to [these same] concerns" raised by plaintiff in October, plaintiff was not sent a response to his November 2005 letter.

On 9 January 2006, almost three-and-one-half months after plaintiff's reassignment from the CWP, plaintiff sent a letter to NCDOC Secretary Theodis Beck, in which he made the same complaints as those he had made in his previous letters to defendants Bennett and White. However, in this letter, for the first time, plaintiff also alleged

that he was asked to "do construction projects that were for private gain," that he was directed by defendant Howell to use property and resources of the CWP for defendant Howell's personal benefit, and that, while on duty, plaintiff was required to work for the personal benefit of Superintendent of Carteret Correctional, defendant Duncan Daughtry.

On 1 February 2006, the Eastern Region Director of NCDOC's Division of Prisons, defendant Danny Safrit, and the Administrative Services Manager for the Eastern Region of NCDOC's Division of Prisons, defendant Wayne Harris, met with plaintiff at the direction of Secretary Beck to learn more about plaintiff's allegations of misappropriation of State resources. It was at this meeting that plaintiff indicated he was considering resigning his employment, which he did on 6 February 2006. On 27 April 2006, defendants Harris and White concluded their investigation into plaintiff's allegations of misappropriation, recommending that the matter merited further investigation by the State Bureau of Investigation, to which it was referred.

On 22 August 2006, plaintiff filed a civil complaint alleging claims of conversion, violation of the North Carolina Whistleblower Act, and violation of 42 U.S.C. § 1983. Plaintiff named the following eight defendants in his complaint: defendant NCDOC; defendant Bennett; defendant White; defendant Howell; defendant Safrit (misspelled in the complaint as "Seifert"); defendant Harris; defendant Daughtry (misspelled as "Daughtery"); and defendant Florence.

On 20 September 2006, defendants Boyd, White, and Daughtry filed motions to dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). On 20 September 2006, defendants Safrit, Harris, and Florence filed Answers and Affirmative Defenses, which included motions to dismiss pursuant to Rule 12(b)(6), and the assertion of fifteen affirmative defenses, including sovereign immunity, public official immunity, and qualified immunity. On 1 December 2006, defendant NCDOC filed its Answer and Affirmative Defenses, which included a motion to dismiss pursuant to Rule 12(b)(6), and the assertion of the same fifteen affirmative defenses. On 24 October 2006, defendant Howell filed his motion to dismiss. On or after 27 November 2007, defendants NCDOC, Bennett, Safrit, White, Harris, and Florence filed motions for summary judgment. On 31 December 2007, the trial court signed an order granting summary judgment in favor of defendants Bennett, White, and Harris, and denying summary judgment for defendants NCDOC and Florence, and denying defendant Howell's motion to dis-

miss. The trial court's order also denied defendant Daughtry's motion for summary judgment, apparently converting defendant Daughtry's Rule 12(b)(6) motion to a motion for summary judgment, since the record discloses no summary judgment motion filed on behalf of defendant Daughtry. Defendants NCDOC, Florence, and Daughtry gave notice of appeal to this Court and, on 10 June 2008, filed a petition for writ of certiorari.

---

**[1]** The first issue before this Court is whether this appeal is properly before us. For the reasons discussed below, we conclude that the appeal of defendant NCDOC, and that of defendant Florence in his official capacity, are properly before this Court. However, the appeal of defendant Daughtry is not properly before us.

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). Consequently, "[a]n appeal from an interlocutory order will be dismissed as fragmentary and premature unless the order affects some substantial right and will work injury to appellant if not corrected before appeal from final judgment." *Steele v. Moore-Flesher Hauling Co.*, 260 N.C. 486, 491, 133 S.E.2d 197, 201 (1963) (citing *Veazey*, 231 N.C. 357, 57 S.E.2d 377).

The denial of summary judgment is an interlocutory order not ordinarily subject to appeal. *See Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Nevertheless, since "[i]t has long been established that an action cannot be maintained against the State of North Carolina *or an agency thereof* unless it consents to be sued or upon its waiver of immunity . . . ," *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983), "when the moving party claims sovereign, absolute or qualified immunity, the denial of a motion for summary judgment is immediately appealable." *Moore v. Evans*, 124 N.C. App. 35, 39, 476 S.E.2d 415, 420 (1996).

Our appellate courts have determined that sovereign immunity, qualified immunity, governmental immunity, and public official's immunity are affirmative defenses. *See, e.g., Summey v. Barker*, 357 N.C. 492, 494, 586 S.E.2d 247, 248 (2003) (identifying governmental immunity, public official's immunity, and qualified immunity as affirmative defenses); *Herring v. Winston-Salem/Forsyth Cty. Bd. of Educ.*, 188 N.C. App. 441, 445-46, 656 S.E.2d 307, 311 (2008) (identify-

ing sovereign immunity as an affirmative defense); *Burwell v. Giant Genie Corp.*, 115 N.C. App. 680, 684, 446 S.E.2d 126, 129 (1994) (identifying qualified immunity as an affirmative defense) (citing *Gomez v. Toledo*, 446 U.S. 635, 64 L. Ed. 2d 572 (1980)). "Where a defendant does not raise [such] an affirmative defense in his pleadings or in the trial, he cannot present it on appeal." *See Delp v. Delp*, 53 N.C. App. 72, 76, 280 S.E.2d 27, 30, *disc. review denied*, 304 N.C. 194, 285 S.E.2d 97 (1981).

As indicated above, in their answers to plaintiff's complaint, defendants NCDOC and Florence asserted sovereign immunity, public official immunity, and qualified immunity among their affirmative defenses. For this reason, we conclude that the appeals sought by defendant NCDOC and by defendant Florence in his official capacity are properly before this Court. *See Moore*, 124 N.C. App. 39, 476 S.E.2d 420 ("[W]hen the moving party claims sovereign, absolute or qualified immunity, the denial of a motion for summary judgment is immediately appealable."). However, the record before us contains no pleading filed on behalf of defendant Daughtry other than his Rule 12(b)(6) motion and he has asserted no affirmative defenses to plaintiff's complaint. Thus, we conclude that the denial of defendant Daughtry's motion for summary judgment is not immediately appealable on the same grounds as those for defendants NCDOC and Florence.

**[2]** Defendants Florence and Daughtry further contend the trial court decided in its order that they were sued in their individual capacities and, consequently, seek immediate appellate review of several issues from this status, claiming that, without an immediate appeal, they will be subjected to the possibility of two trials. We agree that "the right to avoid the possibility of two trials *on the same issues* can be . . . a substantial right" and may be grounds for an immediate appeal. *See Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982) (omission in original) (internal quotations marks omitted). However, "[a] suit against defendants in their official capacities, as public officials or . . . public employee[s] . . . is a suit against the State." *Harwood v. Johnson*, 326 N.C. 231, 238, 388 S.E.2d 439, 443, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 90 (1990). Accordingly, a suit against defendants Florence and Daughtry in both their official *and* individual capacities would subject them *each* to *only one* trial individually in their individual capacities, since the State would be the actual defendant in any suit brought against them in their official capacities. *See Epps v. Duke Univ., Inc.*, 122 N.C. App. 198, 205, 468

S.E.2d 846, 851 ("State officers sued for damages . . . assume the identity of the government that employs them. By contrast, officers sued in their personal capacity *come to court as individuals*.") (omission in original) (internal quotation marks omitted), *disc. review denied*, 344 N.C. 436, 476 S.E.2d 115 (1996). Thus, the order denying the motions sought by defendants Florence and Daughtry for summary judgment as to claims brought against them in their individual capacities is interlocutory, affects no substantial right, and is not ripe for appellate review. Their appeals of this order are dismissed, and, for the same reasons, we also deny defendants' petition for writ of certiorari.

---

"In order to prevail on their summary judgment motion, defendants must carry the burden of establishing the lack of a genuine issue as to any material fact and their entitlement to judgment as a matter of law." *Bernick v. Jurden*, 306 N.C. 435, 440, 293 S.E.2d 405, 409 (1982). Defendants may meet their burden by "(1) proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party (2) cannot produce evidence to support an essential element of his or her claim, or (3) cannot surmount an affirmative defense which would bar the claim." *Id.* at 440-41, 293 S.E.2d at 409. "If the moving party meets this burden, the nonmoving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not so doing." *Id.* at 441, 293 S.E.2d at 409 (internal quotation marks omitted). "In reviewing a superior court order denying a motion for summary judgment, the standard of review is de novo." *Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 83, 609 S.E.2d 259, 261 (2005).

I.

[3] Defendant NCDOC and defendant Florence in his official capacity (collectively "defendants") first contend plaintiff's claim for conversion against defendants is barred by sovereign immunity. We agree.

"North Carolina has a well-established common law doctrine of sovereign immunity which prevents a claim for relief against the State except where the State has consented or waived its immunity." *Harwood*, 326 N.C. at 238, 388 S.E.2d at 443 (citing *Gen. Elec. Co. v. Turner*, 275 N.C. 493, 168 S.E.2d 385 (1969)). "It is also well-settled that when an action is brought against individual officers in their official capacities the action is one against the [S]tate for the purposes of

applying the doctrine of sovereign immunity." *Whitaker v. Clark,* 109 N.C. App. 379, 381-82, 427 S.E.2d 142, 143-44, *disc. review and cert. denied,* 333 N.C. 795, 431 S.E.2d 31 (1993).

"The State has absolute immunity in tort actions without regard to whether it is performing a governmental or proprietary function except insofar as it has consented to be sued or otherwise expressly waived its immunity." *Guthrie,* 307 N.C. at 534, 299 S.E.2d at 625. In other words, "[c]laims for tort liability are allowed only by virtue of the express waiver of the State's immunity." *Id.* at 534-35, 299 S.E.2d at 625 (citing *Turner v. Bd. of Educ.,* 250 N.C. 456, 109 S.E.2d 211 (1959)). Under current North Carolina law, "[t]he State has not waived sovereign immunity for intentional torts[—including the intentional tort of conversion—]by action of the Tort Claims Act or other statute." *Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill,* 152 N.C. App. 163, 167, 567 S.E.2d 215, 218 (2002).

"The Department of Correction is a state agency created for the performance of essentially governmental functions, and a suit against this department is a suit against the State." *Harwood,* 326 N.C. at 238, 388 S.E.2d at 443 (citing *Pharr v. Garibaldi,* 252 N.C. 803, 115 S.E.2d 18 (1960)). Additionally, "the actions of a county and its officials in maintaining confinement facilities within the context of law enforcement services are likewise encompassed within the rubric of governmental functions," *see Kephart v. Pendergraph,* 131 N.C. App. 559, 563, 507 S.E.2d 915, 918 (1998), and sovereign immunity extends to an assistant superintendent of a county correctional facility in his official capacity when immunity has not been waived. *See Price v. Davis,* 132 N.C. App. 556, 559-60, 512 S.E.2d 783, 786 (1999). Therefore, we conclude that sovereign immunity bars plaintiff's claim for conversion against defendant NCDOC and defendant Florence, in his official capacity as Assistant Superintendent of Carteret County Correctional, and hold that the trial court erred by not granting summary judgment for these defendants with respect to this claim.

## II.

[4] Defendants NCDOC and Florence next contend the trial court erred by denying their motions for summary judgment with respect to plaintiff's claim of a violation of 42 U.S.C. § 1983 for which he seeks to recover monetary damages. We agree.

The United States Supreme Court has held that, "when an action is brought under section 1983 in state court against the State, its

agencies, and/or its officials acting in their official capacities, neither a State nor its officials acting in their official capacity are 'persons' under section 1983 when the remedy sought is monetary damages." *Corum v. Univ. of N.C.*, 330 N.C. 761, 771, 413 S.E.2d 276, 282-83, *reh'g denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992).

In his complaint, plaintiff alleges that, as a result of defendants' "actions or lack thereof" in violation of 42 U.S.C. § 1983, he "has been damaged in excess of ten thousand dollars," and seeks only to be "awarded cost, interest, and actual attorney fees" pursuant to this claim. Accordingly, we conclude that plaintiff was prohibited from seeking monetary damages from defendants NCDOC and Florence in his official capacity, and hold that the trial court erred by not granting summary judgment for these defendants with respect to this claim.

## III.

**[5]** Finally, defendants NCDOC and Florence contend the trial court erred by denying their motions for summary judgment with respect to plaintiff's claim that defendants violated the Whistle-blower Act. We agree.

North Carolina's Whistleblower Act, codified in Article 14 of Chapter 126 of the General Statutes, provides:

It is the policy of this State that State employees shall be encouraged to report verbally or in writing to their supervisor, department head, or other appropriate authority, evidence of activity by a State agency or State employee constituting:

(1) A violation of State or federal law, rule or regulation;

(2) Fraud;

(3) Misappropriation of State resources;

(4) Substantial and specific danger to the public health and safety; or

(5) Gross mismanagement, a gross waste of monies, or gross abuse of authority.

N.C. Gen. Stat. § 126-84(a) (2007). The Act also provides:

(a) No head of any State department, agency or institution or other State employee exercising supervisory authority

shall discharge, threaten or otherwise discriminate against a State employee regarding the State employee's compensation, terms, conditions, location, or privileges of employment because the State employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, any activity described in G.S. 126-84 . . . .

(a1) No State employee shall retaliate against another State employee because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, any activity described in G.S. 126-84.

N.C. Gen. Stat. § 126-85(a), (a1) (2007). The Act further provides:

Any State employee injured by a violation of G.S. 126-85 may maintain an action in superior court for damages, an injunction, or other remedies provided in this Article against the person or agency who committed the violation within one year after the occurrence of the alleged violation of this Article; provided, however, any claim arising under Article 21 of Chapter 95 of the General Statutes may be maintained pursuant to the provisions of that Article only and may be redressed only by the remedies and relief available under that Article.

N.C. Gen. Stat. § 126-86 (2007). In addition, this Court has determined that "[t]he Whistleblower Act, in providing for specific remedies, represents a clear statutory waiver of sovereign immunity to redress violations of the nature proscribed in G.S. § 126-85." *Minneman v. Martin*, 114 N.C. App. 616, 619, 442 S.E.2d 564, 566 (1994).

In *Newberne v. Department of Crime Control and Public Safety*, 359 N.C. 782, 794, 618 S.E.2d 201, 209-10 (2005), our Supreme Court established procedures to guide our courts in adjudicating North Carolina Whistleblower Act violation claims. The first step of this procedure requires that "the plaintiff must endeavor to establish a prima facie case of retaliation under the statute[, including] . . . any available 'direct evidence' that the adverse employment action was retaliatory along with circumstantial evidence to that effect." *Newberne*, 359 N.C. at 794, 618 S.E.2d at 209 (citation omitted). To establish a prima facie case, a plaintiff must prove, by a preponderance of the evidence, the following "three essential elements: (1) that the plaintiff engaged in a protected activity, (2) that the defendant took adverse action against the plaintiff in his or her employment,

and (3) that there is a causal connection between the protected activity and the adverse action taken against the plaintiff." *Id.* at 788, 618 S.E.2d at 206. In the present case, the parties do not dispute that plaintiff established the first element of this claim. Therefore, we must first determine whether defendants "took *adverse action* against the plaintiff in his . . . employment." *See id.* (emphasis added).

On 6 February 2006, plaintiff resigned from his employment with defendant NCDOC due to "actions taken" regarding his "employment status, and the inaction taken by the supervising staff to correct and remedy such action." In his deposition, plaintiff stated the following when questioned about the circumstances surrounding his decision to resign from his employment with defendant NCDOC:

Q. I want you to correct me if I'm wrong, is that you went in and told these—Mr. Harris and Mr. Seifert [sic] that you were, you know, thinking about, if not intending, to resign your employment. I mean what could they have done that would have dissuaded you from that?

A. Well, I mean they tried—they—you know, they tried to talk to me. And I told them—I said—like I said, there was nothing— there was nothing they could do to promise my safety or the fact that I would be, for lack of a better term, blackballed at another unit. So—

. . . .

Q. Are you telling me then that there's nothing they could have said to have changed your mind about resigning?

A. At that point, probably not.

Q. Well, I mean other than Mr. Seifert [sic] and Mr. Harris, who had you told, you know, at the Department of Correction that you were contemplating resigning your employment before you did so?

A. I think that was it. I mean, you know, my wife and I discussed it.

Plaintiff also stated that he did not speak with any of the other named defendants in the present case about his decision to resign from his employment prior to the time when he submitted his resignation on 6 February. Thus, since, by his own testimony, the only persons affiliated with defendant NCDOC whom plaintiff told about his intent to

resign tried to discourage him from doing so, we do not consider plaintiff's resignation to be an "employment action" relevant to this claim. Therefore, we review only whether defendants took "*adverse action*" against plaintiff in his employment when plaintiff was reassigned by defendant Florence from his post on the CWP to a post on the same shift in the correctional officer unit rotation at the same correctional facility.

In his complaint, plaintiff claimed that he was "demoted, transferred from his position, . . . and *adverse action* was taken against him as related to the terms, conditions, privileges, and benefits of employment." (Emphasis added.) We agree that "demotions" are undoubtedly "adverse employment actions" subject to review under a Whistleblower Act violation claim, since such actions would reflect "[a]n employer's decision that substantially and negatively affects an employee's job, such as a termination, *demotion*, or pay cut." *See Black's Law Dictionary* 59 (8th ed. 2004) (emphasis added) (defining "adverse employment action"). This is also consistent with the policies identified in defendant NCDOC's Personnel Manual, which allow all decisions to demote an NCDOC employee to be appealed to the State Personnel Commission according to the process described in its Grievance Policy and Procedures pursuant to Chapter 126 of the General Statutes. However, NCDOC's internal Administrative Grievance process—developed "to resolve non-disciplinary, nondiscriminatory problems arising from employment at the lowest possible level," which are not appealable to the State Personnel Commission—*specifically excludes* "Shift, Post, or Job Assignments" and "Reassignments of duty station" from its internal grievance review. In other words, a reassignment of an NCDOC employee's post or duties is an employment action which is neither appealable to the State Personnel Commission nor appealable under NCDOC's internal Administrative Grievance process.

In the present case, following an investigation regarding plaintiff's October 2005 grievance about his reassignment from the CWP, plaintiff received a letter in November 2005 from defendant White concluding that, since "Shift, Post and Duty station are excluded from the Administrative Grievance Process," the decision to reassign plaintiff to the correctional officer unit rotation from the CWP was "appropriate at this time." Thus, following an internal departmental investigation, plaintiff's reassignment was determined to be an action which was specifically excluded from further review as a non-appealable, non-disciplinary action.

Additionally, in his 20 November 2007 deposition, when plaintiff was asked whether he had ever had "any promotions" or "any demotions" during the course of his employment for defendant NCDOC at Carteret Correctional, he answered, "No." He also stated that the only salary increases he had received from the time he began working for defendant NCDOC in 2000, until his resignation in February 2006, were those increases provided by the General Assembly. When asked whether he considered his first reassignment—from his post on the correctional officer unit rotation, to his post on the CWP's litter squad—as "a promotion in any way," plaintiff said, "No, I—no." Further, when specifically asked whether plaintiff, "in any way consider[ed] this reassignment [from his post on the CWP to his post in the correctional officer unit rotation] a demotion," plaintiff answered, "No." Plaintiff then stated:

> Q. And your earlier testimony was that that [reassignment at the end of September 2005] was not a demotion. Do you stand by that?
>
> A. It wasn't a demotion as in pay.
>
> Q. I mean what other kind of demotion is there—
>
> A. (interposing) It's—
>
> Q. —in the Department of Correction?
>
> A. Because—it was a demotion because I was taken away from my squad. *And it wasn't the fact that I was being taken away from my squad. It was the reason—the reasoning behind.*

Plaintiff also admitted that he suffered "no pay loss" as a result of his reassignment from the CWP, where he was also assigned to work the same shift, but did not further describe why he considered this reassignment to be "adverse." Rather, the only evidence supporting plaintiff's allegation that his reassignment from the CWP to the unit rotation was "adverse" is the following statement taken from his 17 October 2005 letter to defendant Bennett: "I would like to say that I like my job and have received many satisfied moments of accomplishment from the work that we do. . . . The communities that we serve are appreciative and the inmates are given a chance to give something back to the society they have wronged."

This Court has previously determined that an employee placed in a "position of higher respect" and "given supervisory authority" over one's peers, "without regard to the presence or absence of any con-

DEMURRY v. N.C. DEP'T OF CORR.

[195 N.C. App. 485 (2009)]

comitant salary increase," has been "promoted." *Edwards v. Univ. of N.C. at Chapel Hill*, 107 N.C. App. 606, 610, 421 S.E.2d 383, 385-86, *disc. review and supersedeas denied*, 333 N.C. 167, 424 S.E.2d 909 (1992). However, in the present case, plaintiff was reassigned from a position supervising inmates working in the CWP to supervising inmates in the correctional facility unit. Although the absence of a change in salary may not be determinative when considering whether an employee has been "promoted" or, likely, "demoted," based on a thorough review of plaintiff's deposition and the evidence in the record, we find that plaintiff's only support for his complaint that the reassignment from the CWP was "adverse" was that, by not working with the CWP, he might be deprived of the opportunity to have another "satisf[ying] moment[]" at work. On these facts, we cannot conclude that the important protections afforded to State employees from retaliatory employment decisions under the Whistleblower Act extend to the employment action taken in this case, where the only articulable adverse effect on this employee was that he might not have as many "moments" of personal satisfaction in the post to which he was reassigned.

Therefore, we conclude that plaintiff has not forecast evidence that defendants "took *adverse action* against the plaintiff in his . . . employment," *see Newberne*, 359 N.C. at 788, 618 S.E.2d at 206 (emphasis added), and that defendants have shown that plaintiff "cannot produce evidence to support an essential element" of his claim. *See Bernick*, 306 N.C. at 440-41, 293 S.E.2d at 409. Since plaintiff's own deposition and other evidence in the record before us have not shown that a genuine issue of material fact exists for trial on this issue, *see id.* at 441, 293 S.E.2d 409, we must hold that the trial court erred by denying defendants' motions for summary judgment as to this claim. Accordingly, we do not need to consider whether plaintiff established the third element of his prima facie claim of a violation pursuant to the Whistleblower Act.

Reversed and Remanded for further proceedings consistent with this opinion.

Judges WYNN and STEPHENS concur.